FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

01 MAR 30 PM 2:06

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

WILLIAM & HAZEL BARCLAY;
WALTER E. WHEELER; WILLIAM D.
STERRETT; WILLIAM A. CLAYTON, JR.;
ROBERT CAMERON; HERBERT H. JOHNSON;
MARILYN OLSON, on behalf of themselves
and others similarly situated,

CASE NO. 8:01 CV 647-T-27TGW

     Plaintiffs,

v.

**CLASS ACTION COMPLAINT**

PHOENIX TELECOM, LLC;
JERRY D. BEACHAM; JEROLD B. CLAWSON;
SUNCOAST FINANCIAL SERVICES OF
CLEARWATER, INC.; STEVEN SMITH;
GILBERT B. SWARTS; TRI-FINANCIAL GROUP, INC.;
DAVID A. NICKERSON;
RELIANCE TRUST COMPANY;
LIBERTY MARKETING PLAN, INC.;
LIBERTY BENEFITS COMPANY;
JOHN LILJA; RISDON & CO., INC.;
GREGORY A. MAJOR, d/b/a
CHUCK H. FOREST & ASSOC.;
FRANKLIN BANK, N.A.;
SENIOR EDUCATION CENTER OF AMERICA, INC.;
TONY FARGO; MARILYN BEINKE-FARGO;
INTEGRATED COMMUNICATIONS ASSOCIATES;
MAYNARD WEINBERG; TYSKEWICZ & ASSOCIATES;
ROBERT TRIPODE; and DAVID P. McKINNON,

    Defendants.

_____/

**COMPLAINT**

Plaintiffs, William and Hazel Barclay, Walter E. Wheeler, William D. Sterrett, William

1

T 9481
$150.00

A. Clayton, Jr., Robert Cameron, Herbert H. Johnson, Marilyn Olson, individually and on behalf of others similarly situated, hereby sue Defendants,  Phoenix Telecom, LLC ("Phoenix" or "Phoenix Telecom"), Jerry D. Beacham, Jerold B. Clawson, Suncoast Financial Services of Clearwater, Inc., Steven Smith, Gilbert B. Swarts, Tri-Financial Group, Inc., David A. Nickerson, Reliance Trust Company, Liberty Marketing Plan, Inc., Liberty Benefits Company, John Lilja, Risdon & Co., Inc., Gregory A. Major, d/b/a Chuck H. Forest & Assoc., Franklin Bank, N.A., Senior Education Center of America, Inc., Tony Fargo, Marilyn Beinke-Fargo, Integrated Communications Associates, Maynard Weinberg, and Tyskewicz & Associates, Robert Tripode, and David P. McKinnon, and allege:

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is founded on section 22 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77v; section 27 of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.  § 78aa; 28 U.S.C. § 1331; principles of supplemental jurisdiction, 28 U.S.C. § 1367, and principles of diversity jurisdiction, 28 U.S.C. § 1332.

2.     The claims herein arise under sections 12(1), 12(2), and 15 of the Securities Act; sections 10b and 20a of the Exchange Act, and rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (the "SEC"); Florida Statutes sections 517.241, 517.07, 517.12, 517.301, and 501.211; and common law.

3.     This Court has personal jurisdiction over all the Defendants in that each Defendant played a part in the unregistered offering of securities in this State in violation

2

of federal securities laws and each committed a tortious act within this State.

4.      Venue is proper in this District because many of the acts and conduct charged herein occurred in this District and one or more of the Defendants reside in this District.

5.      In connection with the acts and course of conduct alleged in this Complaint, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail and wires and interstate telephones.

## THE PARTIES

### A.    Plaintiffs

6.      During all material times, Plaintiffs William and Hazel Barclay were and are residents of the State of Florida.  In March 1999, Plaintiffs were solicited by Phoenix, Tri-Financial Group, Inc., Suncoast Financial Services of Clearwater, Inc., Steven Smith, and Gilbert Swarts, to purchase a pay telephone investment from Phoenix.  As a result of this solicitation, Plaintiffs entered into an agreement by which they would purchase 2 telephones for $14,000.00 and would then lease the payphones back to Phoenix for five years, with Phoenix agreeing to lease the payphones for $82.25 per month per telephone and agreeing to repurchase the payphones from Plaintiffs for the same purchase price within 180 days of written demand by Plaintiff.  The Agreements in Plaintiffs' possession are attached hereto.

7.      During all material times, Plaintiff Walter E. Wheeler was and is a resident of

3

the State of Florida.   In December 1998, Plaintiff was solicited by Phoenix, Liberty Marketing Plan Co., Liberty Benefits Company, John Lilja, and Tri-Financial Group, Inc., to purchase a pay telephone investment from Phoenix.  As a result of this solicitation, Plaintiff entered into an agreement by which he would purchase 9 telephones for $54,000.00 and would then lease the payphones back to Phoenix for five years, with Phoenix agreeing to lease the payphones for $75.00 per month per telephone and agreeing to repurchase the payphones from Plaintiff for the same purchase price within 180 days of written demand by Plaintiff.  The Agreements in Plaintiff's possession are attached hereto.

8.     During all material times, Plaintiff William D. Sterrett was and is a resident of the State of Florida.  In April 1999, Plaintiff was solicited by Phoenix and Tri-Financial Group, Inc., to purchase a pay telephone investment from Phoenix.  As a result of this solicitation, Plaintiff entered into an agreement by which he would transfer all or part of his IRA to Reliance Trust Company, who would purchase on his behalf 9 telephones for $56,000.00 and would then lease the payphones back to Phoenix for five years, with Phoenix agreeing to lease the payphones for $82.25 per month per telephone and agreeing to repurchase the payphones from Plaintiff for the same purchase price within 180 days of written demand by Plaintiff.  The Agreements in Plaintiff's possession are attached hereto.

9.     During all material times, Plaintiff William A. Clayton, Jr. was and is a resident of the State of Florida. In February 1999, Plaintiff was solicited by Phoenix, Tri-Financial

4

Group, Inc., Risdon & Co., Inc., Gregory A. Major d/b/a Chuck H. Forest & Assoc., and

Franklin Bank, N.A., to purchase a pay telephone investment from Phoenix.  As a result

of this solicitation, Plaintiff entered into an agreement by which he would transfer all or part

of his IRA to Franklin Bank, N.A., who would purchase on his behalf 1 telephone for

$7,000.00 and then lease the payphone back to Phoenix for five years, with Phoenix

agreeing to lease the payphone for $82.25 per month per telephone and agreeing to

repurchase the payphone from Plaintiff for the same purchase price within 180 days of

written demand by Plaintiff.  The Agreements in Plaintiff's possession are attached hereto.

10.     During all material times, Plaintiff Robert Cameron was and is a resident of

the State of Florida.  In June 1999, Plaintiff was solicited by Phoenix, Tyskewicz &

Associates, and Robert Tripode  to purchase a pay telephone investment from Phoenix.

As a result of this solicitation, Plaintiff entered into an agreement by which he would

transfer all or part of his IRA to Franklin Bank, N.A., who would purchase on his behalf 1

telephone for $7,000.00 and then lease the payphone back to Phoenix for five years, with

Phoenix agreeing to lease the payphone for $82.25 per month per telephone and agreeing

to repurchase the payphone from Plaintiff for the same purchase price within 180 days of

written demand by Plaintiff.  The Agreements in Plaintiff's possession are attached hereto.

11.     During all material times, Plaintiff Herbert H. Johnson was and is a resident

of the State of Florida.  In April 1999, Plaintiff was solicited by Phoenix, Tri-Financial

Group, Inc., and Maynard Weinberg to purchase a pay telephone investment from

Phoenix. As a result of this solicitation, Plaintiff entered into an agreement by which he

would purchase 4 telephones for $24,000.00 and would then lease the payphones back to Phoenix for five years, with Phoenix agreeing to lease the payphones for $75.00 per month per telephone and agreeing to repurchase the payphones from Plaintiff for the same purchase price within 180 days of written demand by Plaintiff. The Agreements in Plaintiff's possession are attached hereto.

12.     During all material times, Plaintiff Marilyn Olson was and is a resident of the State of Florida.  In September 1997, Plaintiff was solicited by Phoenix, Senior Education Center of America, Inc., Tony Fargo, Marily Beinke-Fargo, and Integrated Communications Associates, to purchase a pay telephone investment from Phoenix.  As a result of this solicitation, Plaintiff entered into an agreement by which she would purchase 4 telephone for $24,000.00 and would then lease the payphones back to Phoenix for five years, with Phoenix agreeing to lease the payphones for $75.00 per month per telephone and agreeing to repurchase the payphones from Plaintiff for the same purchase price within 180 days of written demand by Plaintiff.  Additional agreements were entered into in February 1998 ($23520.00), March 1998 ($11760.00), August 1998 ($87300.00), December 1998 ($6000.00), and March 1999 ($14000.00), under similar terms and conditions.  The Agreements in Plaintiff's possession are attached hereto.

13.     All of the above agreements were sent to or from Phoenix's home office by interstate mails.

**B.     Defendants**

14.     During all relevant times, Phoenix was a Georgia corporation, doing business

6

in the State of Florida.  Phoenix entered into pay phone agreements with investors in Florida and directly participated in selling the Agreements to investors in Florida.  Phoenix entered into (i) the Telephone Equipment Lease Agreements and (ii) the Option to Sell Agreements, with investors in Florida.

15.     During all relevant times, Jerry D. Beacham was a primary shareholder and/or officer of Phoenix, and a controlling person of that corporation.

16.     During all relevant times, Jerold B. Clawson was the primary shareholder and/or officer of Phoenix, and a controlling person of that corporation.

17.     During all relevant times, Suncoast Financial Services of Clearwater, Inc. was a Florida corporation doing business in the State of Florida through its agents. Suncoast Financial Services of Clearwater, Inc. directly participated in selling the Agreements to investors in Florida.

18.     During all relevant times, Steven Smith was a resident of Florida and directly participated in selling the Agreements to investors in Florida.  Defendant was a primary shareholder and officer of Suncoast Financial Services of Clearwater, Inc., and a controlling person of that corporation.

19.     During all relevant times, Gilbert B. Swarts was a resident of Florida and directly participated in selling the Agreements to investors in Florida.  Defendant was a primary shareholder and officer of Suncoast Financial Services of Clearwater, Inc., and a controlling person of that corporation.

20.     During all relevant times, Tri-Financial Group, Inc. was a foreign corporation

7

doing business in the State of Florida through its agents. Tri-Financial Group, Inc. directly participated in selling the Agreements to investors in Florida.

21.     During all relevant times, David Nickerson was not a resident of the State of Florida and directly participated in selling the Agreements to investors in Florida by providing promotional materials to potential investors.   In addition, Defendant was a primary shareholder and officer of Tri-Financial Group, Inc., and a controlling person of that corporation.

22.     During all relevant times, Reliance Trust Company was a foreign corporation doing business in the State of Florida through its agents.  Reliance Trust Company sold its IRA services to residents in Florida through agents operating on its behalf, including the Selling Defendants.

23.     During all relevant times, Liberty Marketing Plan, Inc. was a Florida corporation doing business in the State of Florida through its agents.  Liberty Marketing Plan, Inc. directly participated in selling the Agreements to investors in Florida.

24.     During all relevant times, Liberty Benefits Company was a Florida corporation doing business in the State of Florida through its agents.  Liberty Benefits Company directly participated in selling the Agreements to investors in Florida.

25.     During all relevant times, John Lilja was a resident of Florida and directly participated in selling the Agreements to investors in Florida.  Defendant was a primary shareholder and officer of Liberty Marketing Plan, Inc. and Liberty Benefits Company, and a controlling person of those corporations.

26.    Gregory A. Major, d/b/a Chuck H. Forest & Assoc., was a resident of Florida and directly participated in selling the Agreements to investors in Florida.

27.    During all relevant times, Risdon & Co., Inc., was a Florida corporation doing business in the State of Florida through its agents. Integrated Communications Associates directly participated in selling the Agreements to investors in Florida.

28.    During all relevant times, Senior Education Center of America, Inc. was a foreign corporation doing business in the State of Florida through its agents. Senior Education Center of America, Inc. directly participated in selling the Agreements to investors in Florida.

29.    During all relevant times, Integrated Communications Associates was a Florida corporation doing business in the State of Florida through its agents.  Integrated Communications Associates directly participated in selling the Agreements to investors in Florida.

30.    During all relevant times, Tony Fargo was a resident of Florida and directly participated in selling the Agreements to investors in Florida.  Defendant was a primary shareholder and officer of Integrated Communications Associates, and a controlling person of that corporation.

31.    During all relevant times, Marilyn Beinke-Fargo was a resident of Florida and directly participated in selling the Agreements to investors in Florida.  Defendant was a primary shareholder and officer of Integrated Communications Associates, and a controlling person of that corporation.

9

32.     During all relevant times, Maynard Weinberg was a resident of Florida and directly participated in selling the Agreements to investors in Florida.

33.     During all relevant times, Tyskewicz & Associates directly participated in selling the Agreements to investors in Florida.

34.     During all relevant times, Robert Tripode was a resident of Florida and directly participated in selling the Agreements to investors in Florida.

35.     During all relevant times, Franklin Bank, N.A. was a foreign corporation doing business in the State of Florida through its agents. Franklin Bank, N.A. sold its IRA services to residents in Florida through agents operating on its behalf, including the Selling Defendants.

36.     During all relevant times, McKinnon & Associates, Inc., was a foreign corporation.  McKinnon & Associates, Inc. directed its activities to the residents in Florida and caused injury to Florida residents by its statements.

37.     During all relevant times, David McKinnon was not a resident of the State of Florida, but directed his activities to the residents of Florida and caused injury by the publication of his statements in Florida.


## CLASS ALLEGATIONS

38.     Plaintiffs bring this action on behalf of a class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), consisting of all persons who were solicited and purchased Phoenix Agreements or otherwise invested in Phoenix by purchasing

10

payphones from Phoenix by or through Defendants, within the applicable limitations period and who are damaged thereby. Excluded from the Class are Defendants, any of their subsidiaries and affiliates, officers of same, members of their immediate families and their legal representatives, heirs, successors or assigns.

39.      Plaintiffs also bring this action on behalf of a Sub-class (the "Sub-class") pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), consisting of all persons who were solicited in Florida and purchased Phoenix Agreements or otherwise invested in Phoenix in Florida by purchasing payphones from Phoenix by or through Defendants, within the applicable limitations period and who are damaged thereby. Excluded from the Class are Defendants, any of their subsidiaries and affiliates, officers of same, members of their immediate families and their legal representatives, heirs, successors or assigns.

40.      The Class and Sub-Class shall be jointly referred to hereafter as the "Class."

41.      During the Class period, Defendants sold millions of dollars of Agreements to hundreds of Florida investors. Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable.

42.      Plaintiffs' claims are typical of the claims of the Class and all Class members sustained damages arising out of Defendants' wrongful conduct in violation of federal and state laws complained of herein.

43.      There are questions of law and fact common to the Class which predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to all Class members are:

11

(a)   whether the Agreements purchased by the investors constitute securities that should have been registered under federal and state securities laws;

(b)   whether the oral presentations and offering documents falsely stated material facts or omitted material information with regard to the Defendants, their principals, and their operations;

(c)   whether federal and state securities laws were violated by Defendants' acts as alleged herein;

(d)   whether the sale of the agreements were in violation of Florida's Deceptive and Unfair Trade Practices Act; and

(e)   whether the members of the Class have sustained damages, and if so, what is the proper measure of damages.

44.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Furthermore, the expense and burden of individual litigation make it impossible for the Class members to individually redress the wrongs done to them.

45.   Plaintiffs will fairly and adequately protect the interests of all Class members and have retained competent counsel to prosecute this matter.

## GENERAL ALLEGATIONS

46.   Defendant Phoenix (the "Issuing Defendant") is a closely held Georgia corporation. Phoenix was in the business of operating and managing customer-owned coin operated telephones ("COCOT" or "phone").

47.    Phoenix raised capital to finance its operations by offering investors a "pay telephone" investment program.   Under the program, Phoenix offered to potential investors through third parties like Tri-Financial Group, Inc. and Suncoast Financial, the right to earn a substantial rate of return on their investment of approximately 14% per annum for five years, with Phoenix agreeing to return to the investor the amount invested within 180 days of written demand by the investor.

48.    Under the program, an investor could purchase a COCOT for $6,000 to $7,000 (depending on when the person bought the phone) through the Defendants.  After keeping a certain amount for themselves, the Selling Defendants would remit the difference to Phoenix.

49.    The investor would then have three options for the management of the payphones.  Under the first two options,  the owner pays Phoenix a monthly fee for varying levels of service, monitoring, maintenance and operation.  Very few investors chose the first two options.

50.    The third option (the "lease back" option) was selected by over 95% of the investors.  Under that option, Phoenix leased the phone back from the investor for a fixed monthly rental payment, and was responsible for the installation, operation, and servicing of the pay phone.

51.    Phoenix also agreed, within 180 days of written demand by the investor, to re-purchase the phone from the investor for the amount the investor paid for the phone, not the amount Phoenix received from the Selling Defendants, or the value of the

payphone at the expiration of the lease.  Under this third option, the investor had no involvement in the operation of the pay telephone.

52.    In their brochures, Phoenix and the Defendants tout this investment and the returns that can safely be made from an investment with the Issuing Defendant.

53.    Phoenix commingled all of the investors' money from the pay phone sales and the service revenues from operation of the pay phones into a single administrative account out of which it paid the monthly lease payments to its Investors.  Phoenix maintained no reserves, or insufficient reserves,  to repurchase the telephones.

54.    Defendants Phoenix, Jerry D. Beacham, Jerold B. Clawson, Suncoast Financial Services of Clearwater, Inc., Steven Smith, Gilbert B. Swarts, Tri-Financial Group, Inc., Liberty Marketing Plan, Inc., Liberty Benefits Company, John Lilja, Risdon & Co., Inc., Gregory A. Major, d/b/a Chuck H. Forrest & Assoc., Senior Education Center of America, Inc., Tony Fargo, Marilyn Beinke-Fargo, Integrated Communications Associates, Maynard Weinberg, and Tyskewicz & Associates, and Robert Tripode, (jointly, the "Selling Defendants") personally and actively solicited, offered for sale and sold these Agreements to the public through oral presentations and written offering documents.  Each of the Selling Defendants participated in selling the Agreements for their own personal financial gain or for Phoenix's financial gain.

55.    Defendants Jerry D. Beacham, Jerold B. Clawson, Steven Smith, Gilbert B. Swarts, David Nickerson, John Lilja, Tony Fargo, and Marilyn Beinke-Fargo were officers, directors, and/or shareholders in positions of substantial authority over their respective

corporations. Defendants Reliance Trust Company and Franklin Bank, N.A. were control persons for those Defendants who sold their IRA services and the investment to Plaintiffs and the Class. Defendants Jerry D. Beacham, Jerold B. Clawson, Steven Smith, Gilbert B. Swarts, David Nickerson, John Lilja, Gregory Allen Major, Tony Fargo, and Marilyn Beinke-Fargo, Reliance Trust Company, and Franklin Bank (the "Control Defendants") directly supervised and controlled the operations of their respective corporations and/or agents, and the manner in which the Agreements were sold in Florida, including what information, or lack thereof, was provided to potential investors. Said Defendants possessed the authority and the ability to directly or indirectly exercise control over the policies and decision-making with regard to the sale and the manner in which the Agreements were sold.

56.    Through substantially similar oral presentations and written offering documents, investors were promised a substantial income and rate of return if they invested in the Issuing Defendant by purchasing the Agreements.

57.    The offering documents provided to investors included brochures and other advertisements that touted the benefits of purchasing a public payphone from the Issuing Defendant, applications to purchase an Agreement, the bill of sale or purchase agreement, the Telephone Equipment Lease Agreement, the Option to Sell Agreement, and confirmations confirming the investor's involvement with Phoenix, and (where applicable) documents promulgated by Reliance Trust Company and Franklin Bank for the establishment of an IRA with it so that investors could transfer their IRA funds to Reliance

Trust Company or Franklin Bank for investing in Phoenix (the "Offering Documents").

58.   The written and oral sales presentations made by the Issuing and Selling Defendants to potential investors were part of a uniform and standardized sales presentation that was controlled and directed by the Issuing Defendant and contained the same misrepresentations and omissions as the offering documents.

59.   In soliciting investors, the Issuing and Selling Defendants offered the Agreements to the public through a general solicitation.  Through these solicitations, the Issuing and Selling Defendants disseminated offering materials to potential investors in order to induce investors into believing the Agreements were sound and legitimate investment vehicles and that the Issuing Defendant were successful and profitable and had the ability to satisfy the Agreements that were being issued.

60.   In soliciting investors, Plaintiffs and the Class members were not informed that the Agreements were required to be registered as securities under federal and state law.  This information was false and misleading, or omitted material information, in that the securities offered and sold by Defendants constitute the offer and sale of securities as that term is defined under federal and Florida securities law.

61.   In addition, Plaintiffs and the Class members were not informed that the Defendants were required to be registered under Florida law in order to sell the securities.  This information was false and misleading, or omitted material information, in that the Defendants who participated in selling the agreements were required to be registered under Florida's securities laws.

16

62.     In addition, the Issuing and Selling Defendants represented that the Issuing Defendant would pay investors the payments set forth above.  This information was false and misleading, or omitted material information, in that Phoenix was unable to pay investors the promised returns because Phoenix was operating a "ponzi scheme," funneling investors money from succeeding investors to earlier investors, after diverting large portions of the funds to itself and its principals.   Plaintiffs were not informed that the Issuing Defendant were losing significant amounts of money on the operation of the COCOTs and that they were totally dependent upon new investors to pay prior investors.

63.     In addition, Plaintiffs were not informed that a number of states had determined these investments to constitute the sale of unregistered securities and entered cease and desist orders prohibiting the sale of the agreements or were informed that this was not a material matter.

64.     In addition, Plaintiffs were not informed that Ellis Ragland, a control person of Phoenix and Vice President with the company, had an injunction entered against him for violations of the Securities Act and the Securities and Exchange Act or his criminal conviction instate court for operating a ponzi scheme.

65.     In addition, Plaintiffs were informed that their investment was safe and that the investor's telephone equipment is insured.  Plaintiffs were not informed, however, that Phoenix was self-insured, and therefore, that it provided no security beyond the financial viability of Phoenix, which all relevant times was operating a ponzi scheme.

66.     In September 1999, the State of Florida determined that Phoenix was

17

offering a business opportunity within the meaning of Florida's Business Opportunity Act, Fla. Stat. § 559.80, et seq., and required it to offer a rescission to each investor and provide the information required by that Act.

67.    On or about October and November 1999, Phoenix sent to each investor the required notices and offer of rescission, along with financial statements ending with the year 1998. Phoenix also provided to each investor a report issued by David B. McKinnon, CPA, dated September 27, 1999, that stated:

> You have engaged our firm to study the audited and internally prepared financial statements of Phoenix Telecom L.L.C., ("Phoenix"), along with other documents pertaining to your payphone operating business and the payphone operating industry... Our study included conversations with various Phoenix employees and others who have done business with Phoenix.
>
> Our study does not constitute an audit, review, or compilation as defined by the American Institute of Certified Public Accountants or any other report involving verification of the items discussed herein.
>
> Our observations and comments are based on what we saw, heard, and studied tempered by our judgment supported by forty years as an accountant and with ownership and executive positions in several non-accounting businesses.
>
> * * *
>
> Management has advised that they could sell the payphone units under lease for $1,000 more per unit than the average unit cost. If such is the case, Phoenix would have significant market equity in the payphones under lease should it decide to exercise its purchase option as provided for in the lease agreement.
>
> * * *
>
> Management has further advised that the market value of a payphone unit should be enhanced by the increase in revenue from coin calls. In a large number of places, coin calls have increased from $.25 to $.35 per call, and within the next two years are expected to go to $.50 a call.
>
> Another enhancement in value is the anticipated limitation of local calls to 5 minutes in duration. If the customer uses the payphone on the

same local call for more than 5 minutes, the customer will have to deposit additional coins to continue the call for each 5 minute increment of the call.

These anticipated enhancements in value should give comfort to the lessor of the payphone unit knowing that the payphone unit he purchased is continuing to increase in value.

Cellular phones will not replace payphones. The majority of people who use payphones don't own a cellular phone according to management and its industry sources.

* * *

On the whole, a payphone lease with a well managed payphone operating company is as stable a business situation as a commercial real estate or a conventional equipment leasing company.

There is no sure thing in the business world. All businesses are fraught with risk to a greater or lesser degree. We have no crystal ball that tells us whether or not a business will succeed.

In our opinion, a well managed business in a stable and continuing market, that has a positive cash flow with economic opportunities for growth has a reasonable chance for success...

68.     This report was prepared in anticipation and for the purposes of being distributed to all of the investors and to provide assurances to the investors that their investment with Phoenix was a good business opportunity.

69.     All of the above material statements of facts were untrue, or omitted material facts which were necessary in order to make the statements made not misleading in light of the circumstances under which they were made. Phoenix was operating a ponzi and did not have a positive cash flow, opportunities for growth, or the ability to ever to pay the returns promised the Plaintiffs (the lessors of the payphones). The financial statements performed by Grant Thornton as of December 31, 1998, and reviewed by David McKinnon, showed that Phoenix had a negative net worth of over $14 million, was losing millions of dollars annually, and did not, and would never, have the ability to pay the returns promised

19

Plaintiffs.

70.    Plaintiffs and the Class relied upon these statements and omissions in invest-ing in the Issuing Defendant and in deciding not to rescind their agreements.   On information and belief, the individuals in charge of the scheme and who directed all elements of it were the Control Defendants.   By reasons of their position with their respective corporations and/or their shares of stock, they personally orchestrated and directed this illegal scheme.   They ensured that investors were provided with untrue material statements of facts and/or omitted material facts which were necessary in order to make the statements made in the offering documents not misleading.   They also ensured that information normally provided to investors so that investors may gauge the risk of an investment, including audited financial statements, was not provided.

71.    Despite the demands by Plaintiffs and Class members for the return of their investment, the Issuing Defendant has refused to pay investors their principal investment and interest.

72.    The securities sold by the Defendants constituted an integrated offering for the following reasons: a) the same class of securities were issued to fund the operations of the Issuing Defendant; b) the funds raised as a result of the sale of the securities were part of a single plan of financing for the Issuing Defendant and were intermingled; c) the sales of the securities occurred at or about the same time; and, d) the sales of securities were made for the same general purpose of funding the operations of the Issuing Defendant.

20

73.    The acts and omissions of all of the Defendants as set forth herein constitute a conspiracy, plan, scheme, and unlawful course of conduct which operated as a fraud and deceit on Plaintiffs and the Class, the purpose and effect of which was to induce Plaintiffs and the Class to purchase the securities described herein and to enable the Issuing Defendant, the Selling Defendants, and the Control Defendants to personally profit thereby.

74.    Defendants had a fiduciary duty to act in the best interests of Plaintiffs and the Class, in connection with the sale of the Agreements.  A special relationship of trust and confidence existed between Plaintiffs, the Class, and these Defendants, reposing in Defendants the obligations of that of a trustee acting on behalf of Plaintiffs and the Class, in all matters relating to the relationship.

75.    Defendants Reliance Trust Company and Franklin Bank in particular owed a fiduciary duty to those Plaintiffs and members of the Class with IRAs.  Through Defendants acting as their agents, Reliance Trust Company and Franklin Bank encouraged potential investors to transfer all or part of their IRA assets to them so that they could then invest the investor's IRA in Phoenix.  Absent the involvement and participation of Reliance Trust Company and Franklin Bank and their agents, Plaintiffs with IRAs would not have invested their IRA assets in Phoenix's payphone investment scheme.

76.    Reliance Trust Company and Franklin Bank, however, acted recklessly in that they solicited and entrusted huge sums of investors' money to the Issuing Defendant without:  a) conducting an adequate investigation into the financial operations of the

Issuing Defendant, including demanding to review audited financial statements; b) conducting an adequate investigation into whether the operations of the retail business could support the returns promised by the Issuing Defendant; and c) conducting an adequate investigation into whether Phoenix's operations were legal.

77.    In July 2000, Phoenix advised Plaintiffs that it was unable to make any further rental payments on the agreements.  Those agreements are now worthless.


## COUNT I

## SECTIONS 12(1) AND 15 OF THE SECURITIES ACT

78.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1-77. Plaintiffs assert this Count against the Issuing, Selling, and Control Defendants on behalf of Plaintiffs and the Class under sections 12(1) and 15 of the Securities Act, 15 U.S.C. §§ 77(l)(1) and 77(o).  The Agreements which were offered and sold to Plaintiffs and the Class members constitute securities as that term is defined under the Securities Act.

79.    The Issuing and Selling Defendants actively solicited, offered for sale and sold Agreements to investors on behalf of the Issuing Defendant.

80.    The securities sold by Defendants and purchased by the Plaintiffs and the Class were not registered as required under section 12(1) of the Securities Act.

81.    The securities sold by Defendants and purchased by the Plaintiffs and the Class do not constitute a class of securities exempt from registration under the Securities Act.  The Issuing and Selling Defendants are sellers within the meaning of that term under

section 12(1) of the Securities Act.  15 U.S.C. § 77(l)(1).

82.     The Control Defendants by their ability to directly or indirectly control the
actions of the Issuing Defendant are control persons within the meaning of that term under
section 15 of the Securities Act.  15 U.S.C. § 77o.

83.     The Control Defendants knew, or in the exercise of reasonable care should
have known, that the Agreements were securities that were required to be registered under
the Securities Act.

84.     Plaintiffs and other members the Class have been damaged by the conduct
of the Defendants as alleged herein.

85.     This action is brought within the applicable statute of limitations period as set
forth in section 13 of the Securities Act, 15 U.S.C. § 77m, in that:

(a)     this action is filed within one year of the earliest date Plaintiffs and the Class
in the exercise of reasonable diligence should have discovered the violations complained
of herein.  Because of the active and fraudulent concealment by the Issuing Defendant and
the Control Defendants of material information as set forth above, Plaintiffs and the Class
members were unable to determine the scope of the violations and therefore the statute
of limitations was tolled until this action was filed; and

(b)     this action is filed within three (3) years of the sale of the securities
purchased by Plaintiffs and the Class.

86.     Plaintiffs and the Class hereby tender their securities to the Defendants.

23

## COUNT II

## SECTIONS 12(2) AND 15 OF THE SECURITIES ACT

87.     Plaintiffs hereby incorporate by reference the allegations of paragraphs 1-77.

88.     Plaintiffs assert this Count against the Issuing, Selling, and Control Defendants on behalf of the Plaintiffs and the Class under sections 12(2) and 15 of the Securities Act, 15 U.S.C. §§ 77(l)(2) and 77(o).

89.     The Issuing and Selling Defendants actively solicited, offered for sale, and sold Agreements of the Issuing Defendant to the public through oral presentations and written offering documents.   Such presentations and offering documents constitute "prospectuses" within the meaning of that term under section 12 of the Securities Act.

90.     The oral presentations and documents provided to Plaintiffs and the Class falsely stated and omitted material facts as set forth above.  These untrue statements of facts were material or omitted material facts which were necessary in order to make the statements made not misleading in the light of the circumstances under which they were made.

91.     The Issuing and Selling Defendants are sellers within the meaning of that term under section 12(2) of the Securities Act.  15 U.S.C. § 77(l)(2).

92.     The Control Defendants are control persons within the meaning of that term under section 15 of the Securities Act.  15 U.S.C. § 77o.

93.     The Issuing, Selling, and Control Defendants knew, or in the exercise of reasonable care and due diligence, should have known, that such statements and

24

omissions were misleading and material.

94.    Plaintiffs and the Class did not know, and in the exercise of reasonable care, could not have known of such omissions and the falsity of the statements.

95.    Plaintiffs and the Class have been damaged by the conduct of the Defendants as alleged herein.

96.    This action is brought within the applicable statute of limitations period as set forth in section 13 of the Securities Act, 15 U.S.C. § 77m, in that:

(a)    this action is filed within one year of the earliest date Plaintiffs and the Class in the exercise of reasonable diligence should have discovered the violations complained of herein.  Because of the active and fraudulent concealment by the Issuing Defendant and the Control Defendants of material information as set forth above, Plaintiffs and the Class members were unable to determine the scope of the violations and therefore the statute of limitations was tolled until this action was filed; and

(b)    this action is filed within three (3) years of the sale of the securities purchased by Plaintiffs and the Class.

97.    Plaintiffs and the Class hereby tender their securities to the Defendants.


**COUNT III**

**SECTIONS 10B AND 20(a) OF THE EXCHANGE ACT**

**AND RULE 10(b)-5**

98.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1-77.

25

99.     Plaintiffs assert this Count against all of the Defendants on behalf of the Plaintiffs and the Class under sections 10b and 20a of the Securities and Exchange Act of 1934 and Rule 10(b)-5.

100.    The Defendants issued or caused to be issued offering documents, which were relied upon by Plaintiffs and the Class, which documents falsely stated or omitted material information as set forth above.

101.    The Defendants knew, or were reckless in not knowing, of the materially false statements or omissions as set forth above. Had this information been truthfully and completely disclosed, Plaintiffs and the Class would not have invested with the Issuing Defendant.

102.    In carrying out this scheme, the Defendants acted with scienter in that they held themselves out as being knowledgeable in the solicitation of capital from investors. Yet, in selling the Agreements, each of the Defendants committed a patent violation of the federal and state securities laws as the Agreements were clearly marketed and sold to the public in such a way so as to fall within the ambit of the these laws.

103.    The Defendants also acted recklessly in that they solicited and entrusted huge sums of investors' money to the Issuing Defendant without: a) conducting an adequate investigation into the financial operations of the Issuing Defendant, including demanding to review audited financial statements; b) conducting an adequate investigation into whether the operations of the retail business could support the returns promised by the Issuing Defendant; and c) conducting an adequate investigation into whether the

Issuing Defendant' operations were legal.

104.   The acts and omissions of all of the Defendants as set forth herein constitute a conspiracy, plan, scheme, and unlawful course of conduct which operated as a fraud and deceit on Plaintiffs and the Class, the purpose and effect of which was to induce Plaintiffs and the Class to purchase the securities described herein and to enable the Defendants to personally profit thereby.

105.   But for the Defendants' fraudulent course of conduct, the Agreements would not and could not have been marketed.  A market existed in the Agreements as a result of the Defendants' fraudulent course of conduct, and Plaintiffs and the Class relied on the integrity of this market and the regulatory process in purchasing the agreements. Specifically, Plaintiffs relied upon the fact that the agreements were entitled to be marketed, that the offering memoranda contained complete and accurate disclosures, and/or that the Agreements were properly entitled to an exemption from registration.  If the true facts had been properly disclosed, the offering memoranda would have disclosed that the Agreements were worthless and thus the Agreements could never have been marketed.

106.   All of the Defendants are liable for the violations of section 10(b) because the securities which were sold to Plaintiffs and the Class were part of a single integrated offer and sale of securities and the offering documents were part of a single course of conduct to raise funds for the Issuing Defendant and to pay "returns" to investors.

107.   By reason of the foregoing, all of the Defendants directly violated section

27

10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: a) employed devices, schemes and artifices to defraud; b) falsely stated and omitted material facts from the offering documents necessary to make those documents, in light of the circumstances under which they were made, not misleading; and c) engaged in a course of business which operated as a fraud and deceit upon Plaintiff and members of the Class in connection with their purchase of the securities identified herein.

108.    As a result of the foregoing, the Issuing and Selling Defendants were able to successfully complete the various offerings to investors.  In particular, if the true facts had been disclosed in the offering documents, neither the Plaintiffs nor any member of the Class would have purchased the securities.  In ignorance of the true facts, Plaintiffs and the Class relied, to their detriment, on the various offering documents and the advice provided by the Defendants.

109.    By reason of the conduct alleged herein, Defendants are liable under section 10(b) of the Exchange Act.  As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs and the Class have been damaged in connection with their purchase of securities as the Issuing Defendant have defaulted entirely upon the payment of the Agreements.

110.    The Control Defendants are control persons within the meaning of that term under section 20a of the Exchange Act.

111.    The Control Defendants knew, or were reckless in not knowing, of the materially false statements or omissions as set forth above.  Had this information been

truthfully and completely disclosed, Plaintiffs and the Class would not have invested with the Issuing Defendant.  Accordingly, the Control Defendants are liable to Plaintiffs and the Class.  15 U.S.C. § 78t(a).

112.   This action is brought within the applicable statute of limitations period as set forth in section 13 of the Securities Act, 15 U.S.C. § 77m, in that:

(a)     this action is filed within one year of the earliest date Plaintiffs and the Class in the exercise of reasonable diligence, should have discovered the violations complained of herein.  Because of the active and fraudulent concealment by the Issuing Defendant and the Control Defendants of material information as set forth above, Plaintiffs and the Class members were unable to determine the scope of the violations and therefore the statute of limitations was tolled until this action was filed; and

(b)     this action is filed within three (3) years of the sale of the securities purchased by Plaintiffs and the Class.

## COUNT IV

## FLA. STAT. § 517.241

113.   Plaintiffs hereby incorporate by reference the allegations of paragraphs 1-77.

114.   Plaintiffs assert this Count against the Defendants on behalf of Plaintiffs and the Sub-class under Florida Statutes section 517.241.

115.   Plaintiffs re-assert their claims in Counts I - III under Florida Statutes section 517.241, which section provides a state securities remedy for federal securities violations.

29

By reason of the conduct alleged above in Counts I - III, Defendants are liable for Plaintiffs and the Sub-class under Florida Statutes section 517.241.  As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs and the Sub-class has been damaged in connection with their purchase of securities as the Issuing Defendant have defaulted entirely upon the payment of the Agreements.

116.    This action is brought within the applicable statute of limitations period set forth in Florida Statutes section 95.11(4e), in that:

(a)    this action is filed within two years of the earliest date Plaintiffs and the Sub-class, in the exercise of reasonable diligence, should have discovered the violations complained of herein.  Because of the active and fraudulent concealment of material information as set forth above, Plaintiffs and the Sub-class members were unable to determine the scope of the violations and therefore the statute of limitations was tolled until this action was filed; and

(b)    this action is filed within five (5) years of the sale of the securities purchased by Plaintiffs and the Sub-class.

117.    Plaintiffs and the Sub-class hereby tender their securities to the Defendants.


## COUNT V

## FLA. STAT. § 517.07

118.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1-77.

119.    Plaintiffs assert this Count against the Issuing, Selling, and Control

30

Defendants on behalf of Plaintiffs and the Sub-class under Florida Statutes section 517.07.

120.   The Agreements which were offered and sold to Plaintiffs and Sub-class members were securities as that term is defined under Florida's Securities and Investors Protection Act, Florida Statutes section 517.021(17).

121.   The securities sold by the Defendants and purchased by the Plaintiffs and the Sub-class do not constitute a class of securities exempt from registration under Florida Statutes Chapter 517.

122.   The securities sold by the Defendants were not registered pursuant to Florida Statutes Chapter 517.

123.   The Issuing and Selling Defendants were sellers of the securities who personally participated or aided in making the sales.

124.   The Control Defendants were directors, officers, partners or agents of the sellers who also personally participated or aided in making the sales as they knew of and directly controlled the manner in which the Agreements were sold in Florida by the Issuing and Selling Defendants.

125.   Plaintiffs and the Sub-class have been damaged by the conduct of the Defendants as alleged herein.

126.   This action is brought within the applicable statute of limitations period set forth in Florida Statutes section 95.11(4e), in that:

(a)   this action is filed within two years of the earliest date Plaintiffs and the Sub-class, in the exercise of reasonable diligence, should have discovered the violations

31

complained of herein.  Because of the active and fraudulent concealment of material information as set forth above, Plaintiffs and the Sub-class members were unable to determine the scope of the violations and therefore the statute of limitations was tolled until this action was filed; and

(b)      this action is filed within five (5) years of the sale of the securities purchased by Plaintiffs and the Sub-class.

127.   Plaintiffs and the Sub-class hereby tender their securities to Defendants.

## COUNT VI

## FLA. STAT. § 517.12

128.   Plaintiffs hereby incorporate by reference the allegations of paragraphs 1-77.

129.   Plaintiffs assert this Count against the Issuing and Selling Defendants on behalf of Plaintiffs and the Sub-class under Florida Statutes section 517.12.

130.   The Agreements which were offered and sold to Plaintiffs and Sub-class members were securities as that term is defined under Florida's Securities and Investors Protection Act, Florida Statutes section 517.021(17).

131.   The securities sold by the Defendants and purchased by the Plaintiffs and the Sub-class do not constitute a class of securities exempt from registration under Florida Statutes Chapter 517.

132.   The Defendants were not registered pursuant to Florida Statutes Chapter 517.

133.   The Issuing and Selling Defendants were sellers of the securities who personally participated or aided in making the sales.

134.   Plaintiffs and the Sub-class have been damaged by the conduct of the Defendants as alleged herein. This action is brought within the applicable statute of limitations period set forth in Florida Statutes section 95.11(4e), in that:

(a)     this action is filed within two years of the earliest date Plaintiffs and the Sub-class, in the exercise of reasonable diligence, should have discovered the violations complained of herein.   Because of the active and fraudulent concealment of material information as set forth above, Plaintiffs and the Sub-class members were unable to determine the scope of the violations and therefore the statute of limitations was tolled until this action was filed; and

(b)     this action is filed within five (5) years of the sale of the securities purchased by Plaintiffs and the Sub-class.

135.   Plaintiffs and the Sub-class hereby tender their securities to Defendants.


## COUNT VII

### FLA. STAT. § 517.301

136.   Plaintiffs hereby incorporate by reference the allegations of paragraphs 1-77.

137.   Plaintiffs assert this Count against the Issuing, Selling, and Control Defendants on behalf of Plaintiffs and the Sub-class under Florida Statutes section 517.301. The Agreements which were offered and sold to Plaintiffs and Sub-class

members were securities as that term is defined under Florida Statutes section 517.021-(17).

138.   The Issuing and Selling Defendants issued or caused to be issued offering documents, which were relied upon by Plaintiffs and the Sub-class, which documents falsely stated or omitted material information as set forth above.

139.   The Control Defendants were directors, officers, partners or agents of the sellers who also personally participated or aided in making the sales as they knew of and directly controlled the manner in which the Agreements were sold in Florida by the Issuing and Selling Defendants.

140.   The Issuing, Selling, and Control Defendants knew, or should have known, of the materially false statements or omissions as set forth above.  Had this information been truthfully and completely disclosed, Plaintiffs and the Sub-class would not have invested with the Issuing Defendant.

141.   Plaintiffs did not know, and in the exercise of reasonable care could not have known, of such false statements and omissions.

142.   Plaintiffs and the Sub-class have been damaged by the conduct of the Defendants as alleged herein.

143.   This action is brought within the applicable statute of limitations period set forth in Florida Statutes section 95.11(4e), in that:

(a)      this action is filed within two years of the earliest date Plaintiffs and the Sub-class, in the exercise of reasonable diligence, should have discovered the violations

34

complained of herein.  Because of the active and fraudulent concealment of material information as set forth above, Plaintiffs and the Sub-class members were unable to determine the scope of the violations and therefore the statute of limitations was tolled until this action was filed; and

(b)     this action is filed within five (5) years of the sale of the securities purchased by Plaintiffs and the Sub-class.

144.    Plaintiffs and the Sub-class hereby tender their securities to Defendants.

## COUNT VIII

### FLA. STAT. § 501.211

145.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1-77.

146.    Plaintiffs assert this Count against all of the Defendants on behalf of Plaintiffs and the Sub-class under Florida Statutes section 501.211, Florida's Deceptive and Unfair Trade Practices Act.

147.    For the reasons previously set forth, the sale of the Agreements which were offered and sold to Plaintiffs and Sub-class members constitute an unfair method of competition, unconscionable act or practice, and an unfair or deceptive act or practice in that the Defendants: a) employed devices, schemes and artifices to defraud; b) falsely stated and omitted material facts from the offering documents necessary to make those documents, in light of the circumstances under which they were made, not misleading; and c) engaged in a course of business which operated as a fraud and deceit upon Plaintiffs

and members of the Sub-class in connection with their purchase of the securities identified herein.

148.   As a result of the foregoing, the Issuing and Selling Defendants were able to successfully complete the various offerings to investors.  In particular, if the true facts had been disclosed in the offering documents, neither the Plaintiffs nor any member of the Sub-class would have purchased or kept the securities.  In ignorance of the true facts, Plaintiffs and the Sub-class relied, to their detriment, on the various offering documents and the advice provided by the Defendants.

149.   Plaintiffs and the Sub-class have been damaged by the conduct of the Defendants as alleged herein.

150.   This action is brought within the applicable statute of limitations.

## COUNT IX

## BREACH OF FIDUCIARY DUTY

151.   Plaintiffs hereby incorporate by reference the allegations of paragraphs 1-77.

152.   Plaintiffs assert this Count against all of the Defendants on behalf of Plaintiffs and the Sub-class.

153.   Defendants had a fiduciary duty to act in the best interests of Plaintiffs and the Sub-class, in connection with the sale of the Agreements.  A special relationship of trust and confidence existed between Plaintiffs, the Sub-class, and these Defendants, reposing in Defendants the obligations of that of a trustee acting on behalf of Plaintiffs and the Sub-class, in all matters relating to the relationship.

36

154.   Defendants breached their fiduciary duties to the Plaintiffs and the Sub-class. The Defendants knew, or should have known, of the materially false statements or omissions as set forth above.   Had this information been truthfully and completely disclosed, Plaintiffs and the Sub-class would not have invested with the Issuing Defendant or kept their investment.

155.   Plaintiffs did not know, and in the exercise of reasonable care could not have known, of such false statements and omissions.

156.   As a proximate cause of Defendants conduct, Plaintiffs and the Sub-class have been damaged.

157.   This action is brought within the applicable statute of limitations.


## COUNT X

## NEGLIGENT MISREPRESENTATION

158.   Plaintiffs hereby incorporate by reference the allegations of paragraphs 1-77.

159.   Plaintiffs assert this Count against all of the Defendants on behalf of Plaintiffs and the Sub-class for negligent misrepresentation.

160.   Defendants issued or caused to be issued documents, which were relied upon by Plaintiffs and the Sub-class, which documents falsely stated or omitted material information as set forth above.

161.   Defendants knew, or should have known, of the materially false statements and omissions as set forth above.   Had this information been truthfully and completely

disclosed, Plaintiffs and the Sub-class would not have invested with the Issuing Defendant or retained their investment.

162.   Defendants owed a duty to the investors in issuing and causing to be issued these documents to not make materially false statements and omissions.

163.   Plaintiffs and the Sub-class have been damaged by the conduct of the Defendants as alleged herein.


## COUNT XI

## CONSPIRACY

164.   Plaintiffs hereby incorporate by reference the allegations of paragraphs 1-77.

165.   Plaintiffs assert this Count against all of the Defendants on behalf of Plaintiffs and the Sub-class.

166.   The acts and omissions of all of the Defendants as set forth herein constitute a conspiracy, plan, scheme, and unlawful course of conduct which operated as a fraud and deceit on Plaintiffs and the Sub-class, the purpose and effect of which was to induce Plaintiffs and the Sub-class to purchase and keep the securities described herein and to enable the Issuing Defendant, the Selling Defendants, and the Control Defendants to personally profit thereby.

167.   Plaintiffs did not know, and in the exercise of reasonable care could not have known, of such false statements and omissions.

168.   As a proximate cause of Defendants conduct, Plaintiffs and the Sub-class

have been damaged.

169.   This action is brought within the applicable statute of limitations.

## PRAYER

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, respectfully request that this Court:

(a)   certify this action as a class action under Rule 23(b)(3), Federal Rules of Civil Procedures;

(b)   award Plaintiffs and the Class their damages, including prejudgment interest, under each of the counts of this Complaint;

(c)   award Plaintiffs and the Class their attorneys' fees;

(d)   award Plaintiffs and the Class their costs and expenses under each of the counts of this Complaint; and

(e)   award Plaintiffs and the Class such further relief as is appropriate in the interests of justice.

DATED this 29 day of March, 2001.

STEVEN P. SEYMOE
Fla. Bar I.D. #501750
Trial Counsel
Ausley & McMullen
Post Office Box 391
Tallahassee, Florida 32302
(850) 224-9115

ATTORNEYS FOR PLAINTIFFS

# DOCUMENT ATTACHMENTS, OR EXHIBITS NOT SCANNED

## FOR THE FOLLOWING REASON(S):

____   **PHYSICAL SIZE OF PAPER** (LARGER OR SMALLER THAN 8 ½ X 11)

☒   **EXCEEDS PAGE LIMIT**

____   **DOUBLE-SIDED PAGES**

____   **BINDING CANNOT BE REMOVED WITHOUT DAMAGING DOCUMENT**

____   **CASE LAW**

____   **SOCIAL SECURITY RECORD/ANSWER**

____   **TRANSCRIPT**

# PLEASE REFER TO COURT FILE FOR COMPLETE DOCUMENT